**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

GREGORY WALLIS,                :
                               :   Civil Action No. 10-5887 (PGS)
            Plaintiff,         :
                               :
       v.                      :   **OPINION**
                               :
MONMOUTH COUNTY JAIL,          :
                               :
            Defendant.         :

**APPEARANCES:**

Plaintiff <u>pro se</u>
Gregory Wallis
Southern State Correctional Facility
Delmont, NJ  08314

SHERIDAN, District Judge

Plaintiff Gregory Wallis, a prisoner confined at Southern State Correctional Facility in Delmont, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff was previously confined at Monmouth County Jail. He asserts that, while there, the jail permitted grease to build up on the floor in the area where he worked. He alleges that the jail failed to provide any warning about the slippery floor. He also alleges that the jail failed to provide non-slip footwear.

Plaintiff alleges that he was seriously injured in an accident resulting from the slippery floor. He seeks compensatory damages in the amount of $100,000.00. The only named defendant is Monmouth County Jail.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a

4

> claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

> the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances. ... If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

6

>    rights, privileges, or immunities secured by the
>    Constitution and laws, shall be liable to the party
>    injured in an action at law, suit in equity, or other
>    proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations

7

omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The

>second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

## IV. ANALYSIS

A.  Monmouth County Jail

A jail is not a "person" amenable to suit under 42 U.S.C. § 1983. See Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (Cook County Jail not a "person" under § 1983); McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-94 (E. D. Va. 1992) (local jail not a "person" under § 1983); Vance v. County of Santa Clara, 928 F. Supp. 993, 995 (N.D. Cal. 1996) (county department of corrections is an agency of the county and cannot be sued separately from the county under § 1983); Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979) (county department of corrections not a suable entity separate from the county). Accordingly, all claims against Monmouth County Jail must be dismissed with prejudice.

B.   The "Slip and Fall" Claim

Here, the Court construes Plaintiff's allegations as an attempt to state a claim arising out of dangerous conditions of confinement at Monmouth County Jail.

To the extent Plaintiff was a convicted and sentenced prisoner at the time of the acts complained of, he is protected by the Eighth Amendment proscription against cruel and unusual punishment; pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment.[1]  See Bell v. Wolfish, 441 U.S. 520, 535, n.16, 545 (1979); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  With respect to medical care and prison conditions, however, pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners.  Bell v. Wolfish, 441 U.S. at 545; Hubbard, 399 F.3d at 165-66; Natale, 318 F.3d at 581-82; Kost v. Kozakiewicz, 1 F.3d 176, 187-88 (3d Cir. 1993).

---

[1] Plaintiff does not state, in the Complaint, whether he was a pre-trial detainee or a convicted and sentenced prisoner at the time of his fall.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent

11

to a reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process

12

Clause of the Fourteenth Amendment.[2]  See Hubbard v. Taylor, 399 F.3d 150  (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a

---

[2] A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

> particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.

Whether analyzed under the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment, Plaintiff's allegations regarding slippery floors in his work area amount to nothing more than allegations of negligence, or possibly gross negligence, which fail to state a claim for a constitutional deprivation.

> Slippery floors present neither a substantial risk of serious harm nor a qualitatively intolerable risk. While the rainwater may have been a "potentially hazardous condition, slippery floors constitute a daily risk faced by members of the public at large.  Federal courts from other circuits have therefore consistently held that slippery prison floors do not violate the

Eighth Amendment." <u>Reynolds v. Powell</u>, 370 F.3d 1028, 1031-32 (10th Cir. 2004) (holding standing water in shower did not pose substantial risk of serious harm, even though plaintiff was on crutches); <u>see also</u> <u>Bell v. Ward</u>, 88 F. App'x 125, 127 (7th Cir. 2004) (holding that wet floor in common area of cell block, resulting in four-stitch injury to inmate, did not pose substantial risk of serious harm, noting that he and others had previously crossed wet floor without slipping); <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1457 (9th Cir. 1993) (holding that shackling inmate during showers was not sufficiently unsafe, noting "slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment"); <u>Santiago v. Guarini</u>, 2004 WL 2137822 at *2 (E.D.Pa. Sept.20, 2004) (holding toilet and sink leak in cell, causing slip and fall, did not present substantial risk to inmate's safety and were not objectively serious conditions).

The rainwater on Forde's cell floor also fails to constitute a denial of life's necessities to meet the first prong of a conditions of confinement claim. Forde does not suggest that the water in his cell rose to any significant level other than that which caused him to slip. "[P]uddles are unpleasant but not unconstitutional." <u>Smith v. Melvin</u>, 1996 WL 467658 at *2 (7th Cir. 1996) (affirming lower court's dismissal of complaint, holding leaky toilet and standing water on cell floor was not extreme deprivation); <u>see also</u> <u>Eley v. Kearney</u>, 2005 WL 1026718 at *5 (D.Del. Apr. 25, 2005) (holding that accumulation of rainwater at top of stairs was not a sufficiently serious deprivation); <u>Jackson v. Taylor</u>, 2008 WL 4471439 at *5 (D.Del. Sept. 26, 2008) (holding excessive humidity in kitchen, causing inmates to routinely slip and fall, was not a sufficiently serious deprivation); ... .

"Simply put, '[a] 'slip and fall,' without more, does not amount to cruel and unusual punishment.... Remedy for this type of injury, if any, must be sought in state court under traditional tort law principles.'" <u>Reynolds</u>, 370 F.3d at 1031 (citation omitted).

<u>Forde v. Fischer</u>, 2009 WL 5174650, *3-4 (D.N.J. Dec. 16, 2009) (Eighth Amendment). <u>See also</u> <u>Daniels v. Williams</u>, 474 U.S. 327 (1986) (claim arising out of a fall from pillow left on prison

15

stairs is a claim of negligence, not actionable under the Due Process Clause of the Fourteenth Amendment).  See also DeShaney v. Winnebago Cty. Soc. Servs. Dept., 489 U.S. 189, 202 (1989) ("the Due Process Clause of the Fourteenth Amendment, ... as we have said many times, does not transform every tort committed by a state actor into a constitutional violation" (citations omitted)).  The allegation that the slippery conditions may have existed for some time does nothing to move this claim from a state-law tort claim to a constitutional deprivation.

Accordingly, regardless of the named defendant, this claim must be dismissed with prejudice.

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c), for failure to state a claim.  It does not appear that Plaintiff could cure the defects in the Complaint by amendment.

An appropriate order follows.

```
                                    s/Peter G. Sheridan
                                    PETER G. SHERIDAN, U.S.D.J.
```

Dated:    November 15, 2011